UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SERKAN KANAR,
Petitioner,
v.
FERETI SEMAIA, Warden of Adelanto Detention Facility,
Respondent.

Case No. 5:26-cv-01412-SSC

MEMORANDUM AND ORDER

Petitioner is a noncitizen in civil immigration detention who was previously convicted of driving under the influence and driving without a license. He seeks habeas relief after an Immigration Judge denied bond upon a finding that Petitioner was a danger to the community. Respondent requests that the petition be denied because Petitioner has failed to exhaust the available administrative remedies. The Court agrees and denies the petition without prejudice. Further, the Court denies as moot Petitioner's application for a temporary restraining order.

**I**

On March 24, 2026, Petitioner Serkan Kanar filed a petition for writ of habeas corpus by a person in federal custody pursuant to 28

U.S.C. § 2241. (ECF 1.) Petitioner is a noncitizen[1] who, at the time of filing, was in immigration detention at Desert View Facility in Adelanto, California.[2] (*Id.* at 2–5.)

The petition alleges the following facts. Petitioner was admitted into the United States at Los Angeles International Airport on an F-1 student visa on October 24, 2011. (*Id.* at 1.) He was arrested for driving under the influence (DUI) on August 9, 2012, and convicted of a misdemeanor DUI under section 23152(b) of the California Vehicle Code on September 19, 2012, and sentenced to three years of probation. (*Id.*)

In late 2013, Petitioner was terminated briefly from his required alcohol treatment program "due to a misunderstanding," leading to a bench warrant. (*Id.* at 2.) Two months later, the court recalled the warrant and reinstated Petitioner's probation. (*Id.*) Petitioner successfully completed probation in April 2014 and satisfied all court requirements by August 2014. (*Id.*) On June 6, 2014, Petitioner pleaded guilty to section 12500(A) of the California Vehicle Code (driving without a license), and he was placed on probation. (*Id.*) Petitioner has "remained sober and law-abiding" for the nearly 12 years following this 2014 incident. (*Id.*) Evidence of this rehabilitation was included in the bond record. (*Id.*)

On February 2, 2026, Petitioner was detained by U.S. Immigration and Customs Enforcement's (ICE) Enforcement and Removal Operations (ERO) in Huntington Beach. (*Id.*) Petitioner's

---

[1] Petitioner is a citizen of Turkey. (ECF 1 at 5.)

[2] According to ICE's online detainee locator, Petitioner is currently detained at the Desert View Facility. *See* U.S. Immigration and Customs Enforcement Online Detainee Locator System, Dep't Homeland Sec., https://locator.ice.gov/odls/#/search (last visited Apr. 7, 2026) (search A-number "207449829" and "Turkey").

detention was based on a lead referral regarding his overstay of his student visa and a 10-year-old administrative allegation of marriage fraud from 2015. (*Id.*) On February 4, 2026, a Notice to Appear was issued, charging Petitioner with removability under 8 U.S.C. § 1227(a)(1)(B) for remaining longer than permitted. (*Id.*)

On March 2, 2026, an Immigration Judge (IJ) conducted a custody redetermination hearing. (*Id.*) Despite Petitioner's lawful entry, the IJ's written order asserted that Petitioner is a "Maldonado Bautista class member." (*Id.*) The IJ found Petitioner to be a danger and flight risk based on the 2012 DUI and driving without a license conviction. (*Id.* at 2–3.)

Petitioner names as Respondent Fereti Semaia, in his official capacity as the Warden of Desert View Annex and the Adelanto Detention Facility. (*Id.* at 1, 5.)

Petitioner brings four claims: (1) a Fifth Amendment due process claim alleging that Petitioner's bond hearing was not held before an impartial adjudicator; (2) a claim for violation of the Administrative Procedures Act (APA); (3) a claim for violation of due process through statutory misclassification; and (4) a Fifth Amendment due process claim alleging that at the bond hearing, the burden of proof was improperly shifted to him. (*Id.* at 11–15.)

Petitioner asks that the Court: (1) order Respondent to immediately release Petitioner from custody, (2) order that Respondent may not re-detain Petitioner without first giving him a hearing where the burden is on the government to show by clear and convincing evidence flight risk or danger, and (3) award attorney's fees and costs under the Equal Access to Justice Act. (*Id.* at 15.)

Along with the petition, Petitioner filed an application for a temporary restraining order (TRO). (ECF 3.) After the District Judge issued a briefing schedule on the TRO and expedited briefing on the petition (ECF 5), the parties filed a status report consenting to proceed before the undersigned Magistrate Judge (ECF 9).

On April 1, 2026, Respondent filed an opposition to the TRO and answer to the petition (ECF 8), and Petitioner replied (ECF 12).

The Court finds the matter suitable for determination without oral argument. Fed. R. Civ. P. 78(b); L.R. 7-15.

**II**

Relief in the form of a writ of habeas corpus may be granted to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

**III**

A brief overview of the relevant statutory framework is in order. The federal government exercises broad power over immigration. *Arizona v. United States*, 567 U.S. 387, 394 (2012); U.S. Const. art. I, § 8, cl. 4 (granting Congress the power to "establish an uniform Rule of Naturalization"). Congress enacted the Immigration and Nationality Act (INA) to regulate the entry, presence, and removal of noncitizens.[3] 8 U.S.C. § 1101 *et seq.*

---

[3] The term "alien" is a defined term in the INA meaning "any person not a citizen or national of the United States." 8 U.S.C.

The INA authorizes the detention of certain noncitizens "already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). As relevant here, 8 U.S.C. § 1226(a) provides that a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section, the Attorney General may release [a noncitizen] detained under § 1226(a) on bond or conditional parole." *Jennings*, 583 U.S. at 288 (citation modified).

A detainee may be released on bond if determined not to be a danger to the community or a flight risk. In making such a determination, the nine factors an IJ "may" consider "include any or all of the following:"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise

---

§ 1101(a)(3). Following the lead of the U.S. Supreme Court and the Ninth Circuit, the Court uses the term "noncitizen" in place of "alien." *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).

> escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

"The *Guerra* factor most pertinent to assessing dangerousness" is "the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (quoting *Guerra*, 24 I. & N. Dec. at 40), *abrogated on other grounds by Jennings*, 583 U.S. 281.

**IV**

Respondent argues that Petitioner failed to exhaust his administrative remedies prior to filing the petition.[4] (ECF 8 at 4–6.) The Court agrees.

**A**

Administrative exhaustion is not statutorily mandated under § 2241, but prudential exhaustion may be required when

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

---

[4] Respondent seemingly argues also that the petition is moot because Petitioner received the March 2, 2026 hearing. (ECF 8 at 2.) Because the petition challenges the IJ's decision issuing from that hearing, Respondent has not carried its burden to show mootness. *See Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) ("The party alleging mootness bears a 'heavy burden' in seeking dismissal." (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000))).

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

Administrative exhaustion may be waived when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025) (citation omitted).

Detainees subject to § 1226 who are dissatisfied with the IJ's bond determination may file an administrative appeal for Board of Immigration Appeals (BIA) review. *See Leonardo*, 646 F.3d at 1160. "If they remain dissatisfied, they may file a petition for habeas corpus in the district court." *Id.* Petitioners should "exhaust[] administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." *Id.*; *see Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) ("[A] petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal[.]").

**B**

Prudential exhaustion applies here. Petitioner reserved his right to appeal the IJ's bond denial (ECF 1 at 20), but has not filed an appeal,

*see* Automated Case Information, https://acis.eoir.justice.gov/en/ (last visited Apr. 3, 2026) (search A-number "207 449 829" and "Turkiye (TU)"). On that basis, Petitioner should have waited to file this petition until after appealing to the BIA. *See Leonardo*, 646 F.3d at 1160; *Rojas-Garcia*, 339 F.3d at 819.

Further, the prudential exhaustion factors weigh in favor of requiring exhaustion. First, Petitioner argues that the issues here are purely legal and constitutional, and thus the BIA is not equipped to deal with his claims. The Court disagrees. Because Petitioner challenges the IJ's application of BIA decisions and purported failure to consider certain evidence in the record, the BIA is best equipped to address his claims, and BIA review is needed to establish a proper record and reach a proper decision. *See Hernandez*, 872 F.3d at 988. Further, Petitioner's claims that the IJ misclassified Petitioner as a noncitizen who entered the United States without inspection and failed to require the government to prove the necessity of detention by clear and convincing evidence could be resolved by the BIA. (ECF 1 at 14–15.) If the BIA determines that the IJ should not have denied bond, Petitioner could ultimately be released on bond. Thus, although the BIA cannot directly review the constitutionality of an IJ's determination, BIA review may provide all the relief that Petitioner seeks. Indeed, claims of denial of procedural due process by the IJ "must be raised before the BIA because the agency does have the power to adjudicate procedural due process claims." *Morgan v. Gonzales*, 495 F.3d 1084, 1090 n.2 (9th Cir. 2007).

Next, Petitioner argues that he is not attempting to circumvent a functioning system but rather believes that his constitutional due process rights were violated. (ECF 12 at 3.) He contends also that he is

concerned that he is likely unable to receive a fair appeal from the BIA, noting that the system is influenced by the executive branch and quoting a declaration from a retired IJ that "due process is no longer the norm" and that IJs "cannot be relied on to act as neutral arbiters" because the administration has "fired over 100 IJs" targeting those with high grant rates. (*Id.*) He also cites a "seismic shift" where individualized review has been replaced by "boilerplate language and cookie-cutter denials." (*Id.* at 4.)

For the most part, these arguments reflect why Petitioner thinks review would be futile, and not whether he is attempting to circumvent administrative review. That does not change the fact that Petitioner filed this petition before seeking BIA review. Reviewing Petitioner's claims before the BIA has an opportunity to adjudicate them would allow Petitioner to shortcut the administrative process and would "disrupt the agency's autonomy and result in unnecessary judicial review of unexhausted claims." *Matevosyan v. Warden, Desert View Annex Det. Facility*, No. ED CV 24-01570-PA (DFM), 2025 WL 978153, at *4 (C.D. Cal. Feb. 24, 2025) (citation omitted), *report and recommendation adopted*, 2025 WL 975009 (C.D. Cal. Mar. 31, 2025).

Finally, the BIA is likely capable of correcting the error alleged to have occurred in Petitioner's bond hearing. Although "the BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws[,]" *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995), it is "well-equipped to consider the challenges to the IJ's decision[.]" *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 1233883, at *4 (E.D. Cal. Apr. 29, 2025). While Petitioner argues that administrative correction is impossible (ECF 12 at 4), those arguments too go to futility of BIA appeal, and are addressed below.

For these reasons, prudential exhaustion is required here.

**C**

Petitioner contends that his appeal to the BIA would be futile and thus he is not required to exhaust administrative remedies. (ECF 1 at 6; ECF 12 at 2.) He argues also that exhaustion should be waived because his ongoing detention constitutes irreparable harm. (ECF 12 at 4–6.) The Court addresses each argument in turn below finding that waiver of the exhaustion requirement is not warranted.

**1**

"[A] court may waive the prudential exhaustion requirement if . . . pursuit of administrative remedies would be a futile gesture[.]" *Hernandez*, 872 F.3d at 988.

Here, Petitioner argues that appeal to the BIA is demonstrably futile because "the administration recently purged the BIA, reducing its membership from 28 to 15 judges to remove those not aligned with an enforcement-heavy agenda." (ECF 1 at 6; ECF 12 at 2.) Petitioner further contends that "an [Executive Office for Immigration Review (EOIR)] memorandum dated June 27, 2025, explicitly warns judges that 'exhibiting bias in favor of an alien' will trigger disciplinary action" and argues that "[t]his directive creates an atmosphere of intimidation that renders an appeal to the BIA a futile gesture." (ECF 12 at 4.)

But Petitioner has not demonstrated any specific policy or BIA ruling that would render appeal in his particular case futile. Thus, waiver is not warranted on the basis that appeal would be futile.

**2**

Generally, a demonstration of irreparable harm requires assertion of unique circumstances beyond the fact that the petitioner is purportedly unlawfully detained. *See, e.g.*, *Ortega-Rangel v. Sessions*,

313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018) (administrative exhaustion waived when petitioner showed irreparable harm from continued detention because a hearing in her BIA appeal was not yet scheduled and the BIA appeal might take four months or more to adjudicate, she had lived in the United States for 18 years, she had no other criminal record aside from one arrest, she had a pending criminal case that her detention made more difficult to defend, and she was the primary caregiver for her minor child); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) (administrative exhaustion waived when BIA decision could take several months and petitioner presented evidence of unique harm to him from the effects of detention on his mental health and on the well-being of his 11-year-old son); *cf. Santos Barrera v. Semaia*, No. EDCV 24-1617 PA (PVC), 2025 WL 2684198, at *4 (C.D. Cal. Mar. 5, 2025) (petitioner failed to show that he would suffer irreparable injury when he did not explain what the injury would be).

Here, Petitioner was detained approximately two months ago, on February 2, 2026, and was afforded a bond hearing a month later. And online records indicate that he has an "individual hearing" scheduled for May 21, 2026, before the same IJ who denied him bond. *See* Automated Case Information, https://acis.eoir.justice.gov/en/ (last visited Apr. 7, 2026) (search A-number "207 449 829" and "Turkiye (TU)"). Although courts may find irreparable harm when a detainee has been in custody for a prolonged period, and the BIA appeal would add additional months to the already prolonged detention, the record does not reflect such prolonged detention here. *See, e.g.*, *De Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *4 (N.D. Cal. Sept. 30, 2019) (finding irreparable harm warranting waiver where petitioner

had been detained for over a year, his detention was prolonged an additional six months for reasons outside of petitioner's control, and his detention would be extended by several more months while he awaited BIA review).

Petitioner asserts that his wife has been diagnosed with "active, uncontrolled inflammatory rheumatoid arthritis," putting her at risk of "premature mortality" and "loss of mobility[,]" and that she requires Petitioner's physical assistance to care for their three-year-old U.S. citizen daughter. (ECF 12 at 5–6.) Petitioner also is the primary operator of the family business. (*Id.* at 6.) However, it is now a month since the IJ's decision, and Petitioner has not attempted to appeal it to the BIA, thereby contributing to the purported harm. Thus, Petitioner has not demonstrated sufficiently irreparable harm at this time.

Accordingly, the petition warrants dismissal without prejudice for failure to exhaust administrative remedies.

**ORDER**

For the reasons set forth above, **IT IS ORDERED** that Judgment shall be entered (1) denying the petition (ECF 1) without prejudice, and (2) denying as moot Petitioner's application for a temporary restraining order (ECF 3).

DATED: April 7, 2026

HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE